IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **ON SEMICONDUCTOR CORPORATION, et al.** | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | **CASE NO. 6:09-CV-390** <br> **PATENT CASE** |
| **HYNIX SEMICONDUCTOR, INC., et al.** | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Nanya Technology-Texas LLC's motion to dismiss for improper venue (Docket No. 58), Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Docket No. 64), and Hittite Microwave Corporation's motion to strike Plaintiff's sur-reply (Docket No. 131) are before the Court. Having considered the parties' written submissions and oral arguments, the Court **GRANTS** Defendants' motion to transfer and **DENIES** the motion to strike. In light of granting the motion to transfer, the Court **DENIES** the motion to dismiss as moot. The Court **TRANSFERS** this case to the Northern District of California.

## BACKGROUND

On Semiconductor Corporation and Semiconductor Components Industries, LLC (collectively "On Semiconductor") assert five patents against four groups of defendants. The "Hynix defendants" include: (1) Hynix Semiconductor Inc. ("HSI"), a Korean corporation, (2) Hynix Semiconductor America ("HSA"), a San Jose, California corporation, and (3) Hynix Semiconductor Manufacturing America Inc ("HSMA"), a California corporation with a principal place of business

1

in Eugene, Oregon.  HSA is a subsidiary of HSI.

The "Elpida defendants" include: (1) Elpida Memory, Inc. ("Elpida Japan"), a Japanese corporation, and  (2)  Elpida Memory (USA) Inc. ("Elpida USA"), a Delaware corporation with a principal place of business in Santa Clara, California.  Elpida USA is a wholly owned subsidiary of Elpida Japan.

The "Nanya defendants" include: (1) Nanya Technology Corporation ("NTC"), a Taiwanese corporation, (2) Nanya Technology—Texas, L.L.C. ("NTC Texas"), whose principal place of business is in Houston, Texas, and (3) Nanya Technology Corporation U.S.A. ("Nanya USA"), a Santa Clara, California corporation.

Finally, On Semiconductor brings suit against Hittite Microwave Corporation ("Hittite"), a Delaware corporation with a principal place of business in Massachusetts.

With the exception of Hittite, Defendants are corporate families with their main headquarters in Asia and U.S. headquarters in California, although the Nanya defendants' design work is done in Texas.

HSI has counterclaimed with its own three patents.  Similarly, the Elpida defendants have also counterclaimed with their own three patents.[1]  All Defendants move to transfer this case to the Northern District of California.

## APPLICABLE LAW

Defendants argue that they are entitled to transfer under 28 U.S.C. § 1404(a).  Section

---

[1] Defendants contend that their counterclaims should not be considered in the motion to transfer.  In ruling on a motion to transfer, a court considers the convenience of all parties and witnesses relevant to all claims and controversies in a case.  *See In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ("*In re Volkswagen I*") (considering third-party claims in deciding transfer).  Accordingly, the Court will consider the counterclaim evidence.

1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589

3

F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

No party disputes that this case could have been brought in the Northern District of California. Accordingly, it is an appropriate potential transferee forum.

**The Relative Ease of Access to Sources of Proof**

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id*. This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314–15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

On Semiconductor—and presumably its documents—are located in Phoenix, Arizona. Defendants contend that On Semiconductor's '644, '001, '594, and '523 patents were developed by individuals from the Phoenix, Arizona area, and documents relating to the invention and patent prosecution are located there. On Semiconductor argues that any documents located in Arizona should not be given too much weight in the analysis because they are only slightly closer to

4

California than Texas. Defendants contend that On Semiconductor's '286 patent was designed in the Northern District of California and therefore documents relevant to the '286 patent are likely located in the Northern District of California. However, On Semiconductor states that it has searched for relevant documents in the Northern District of California and has only found one document relevant to the '286 patent.

As to the counterclaims, Defendants contend On Semiconductor's relevant evidence is likely in Phoenix, Arizona. However, On Semiconductor contends its accused products are manufactured by third parties in Lubbock, Texas and Vermont and those third parties have crucial evidence. On Semiconductor contends that the documents related to Elpida's and Hynix's counterclaims are closer to the Eastern District of Texas than the Northern District of California. Additionally, On Semiconductor contends that evidence related to conception and reduction to practice of Hynix's counterclaim patents is located overseas.

Except for Hittite, Defendants all belong to three corporate families whose main headquarters are in Asia. Defendants contend their U.S. operations are centered in the Northern District of California; thus, the majority of their documents are located in either Asia or California. On Semiconductor argues that since Defendants are headquartered in Asia, their Asia offices have more relevant documents than their California offices. Specifically, On Semiconductor argues that Elpida does not have design engineers in the United States and Hynix's most knowledgeable witnesses are in Korea. As to the '286 patent, Defendants contend that Hynix designs or provides technical support for its flash memory products in the Northern District of California. As for the documents related to Hynix's and Elpida's counterclaims, Defendants' documents are likely located in either Asia or the Northern District of California.

NTC Texas designs some of the Nanya products in Houston, Texas, and documents related to their design are in Houston, Texas. In addition to NTC Texas's own design documentation, it also has access to Nanya's electronic design documentation located overseas. The Nanya defendants also have a design center in Vermont, where another subset of accused products are designed. That facility will likewise have relevant documents.

Additionally, On Semiconductor argues that Defendants' major customers and distributors will have evidence relevant to indirect infringement and damages. Two of Nanya's and Hynix's largest customers, Dell and Hewlett Packard, have large Texas operations. Avant, Nanya's primary distributor for Elixir memory in North America, is based in Pflugerville, Texas. Documents at these third-party companies are located closer to the Eastern District of Texas than the Northern District of California.

Hittite is based in Massachusetts, and its design documentation is located in Massachusetts, Texas, Colorado, Canada, and overseas.

The relevant documents in this case are spread throughout and the country and world. On Semiconductor's documents are located in Phoenix, which is closer to the Northern District of California. Its third-party manufacturers' documents are located at their respective locations in Lubbock, Texas and Vermont, both of which are closer to the Eastern District of Texas. Hittite's documents are primarily located in Massachusetts. The remaining Defendants' documents are primarily located in Asia, though NTC Texas's design documents are located in Houston, Texas. Defendants' customers may have relevant documents. Some of those customers are located in Texas, while others are located in California. However, typically in a patent case, the defendant has the majority of relevant documents. *See In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d

at 1345. In this case, both Defendants and On Semiconductor are accused of infringement. The majority of their U.S. documents appear to be closer to the Northern District of California than the Eastern District of Texas. This factor favors transfer.

**The Availability of Compulsory Process to Secure the Attendance of Witnesses**

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

Defendants contend that the Northern District of California will have subpoena power over many witnesses, including two inventors of the '286 patent, the attorneys who prosecuted the '286 patent, and former employees of Catalyst, the company that supposedly developed the '286 patent technology.

Defendants have raised equitable defenses to infringement based on On Semiconductor's participation in the Joint Electron Devices Engineering Council ("JEDEC"), a DRAM standards-setting organization. Defendants contend that On Semiconductor participated in JEDEC meetings where the DRAM standards were proposed and ultimately adopted, but against JEDEC policy failed to disclose that On Semiconductor had patents or patent applications covering the proposed standards. Defendants have identified JEDEC meetings in San Diego and Las Vegas that On Semiconductor's representatives attended. Defendants have identified twenty-two attendees to these meetings who are in the Northern District of California and six additional attendees who reside in California. Defendants argue these witnesses will likely have critical testimony about the degree to

which On Semiconductor participated in the standards setting and about JEDEC members' understanding of their disclosure obligations. These witnesses are subject to compulsory process in the Northern District of California but not in the Eastern District of Texas.

On Semiconductor argues that Defendants have not shown that any of the JEDEC attendees remember anything about the meetings, have any relevant information or documents, or are still located in California. On Semiconductor also argues that the most relevant witnesses to this defense will be On Semiconductor's attendees at the meetings and witnesses from JEDEC's legal department in Virginia, who can testify to JEDEC's patent disclosure policies.

While On Semiconductor's attendees could testify about their participation in the JEDEC meetings, Defendants will likely want to put on their own witnesses to testify about their recollection of On Semiconductor's actions. Defendants may not want to merely rely on On Semiconductor's testimony on that issue. The JEDEC attendees will not be subject to this Court's subpoena power, but would be subject to the Northern District's. Additionally, there are witnesses relevant to the '286 patent that are subject to the Northern District's subpoena power. On Semiconductor has not clearly identified any witnesses in Texas that are subject to this Court's absolute subpoena power. Accordingly, this factor weighs in favor of transfer.

**The Cost of Attendance for Willing Witnesses**

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential

witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204, n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *Id*. (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

9

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344. Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

Defendants contend that since the '644, '001, '594, and '523 patents were developed in the Phoenix area, witnesses relevant to their invention are located in Phoenix. On Semiconductor argues that Defendants exaggerate the impact any Arizona witnesses should have on the transfer analysis because they are only marginally closer to the Northern District of California than the Eastern District of Texas.

Defendants also contend that five of the patent agents or attorneys who prosecuted these patents are located closer to the Norther District of California than the Eastern District of Texas. Additionally, Defendants argue that twenty-eight JEDEC witnesses live in California. Defendants argue that a majority of their U.S.-based employees are located in or near the Northern District of California.

On Semiconductor argues that Defendants' regional managers, account managers, and field application engineers ("FAEs") are responsible for pre- and post-sales communications with customers, which is relevant to indirect infringements. According to On Semiconductor, a majority of Hittite's, Nanya's, and Hynix's domestic account managers and FAEs work in Texas or closer to Texas than the Northern District of California. Defendants counter that they employ thirty-nine sales and account managers and FAEs in the Northern District of California.

NTC Texas, Nanya's design entity, is located in Houston, Texas. NTC Texas employs

10

approximately 30 engineers who design a subset of accused products. Nanya also has a design center in Vermont, employing twenty-three engineers responsible for designing another subset of accused products.

Third-party witnesses related to the manufacture of On Semiconductor's domestically-manufactured accused products are located in Lubbock, Texas and in Vermont. On Semiconductor contends that the inventors of the counterclaim patents are located overseas. Additionally, third-party witnesses from Dell, Hewlett Packard, and Avant—Defendants' customers—are located closer to the Eastern District of Texas than the Northern District of California. Also, several of the attorneys who prosecuted the counterclaim patents are closer to the Eastern District of Texas than the Northern District of California.

As with the relevant documents, the parties have identified witnesses all over the country. Typically, the convenience of third-party witnesses is given greater weight than the convenience of party witnesses. In this case the parties have identified attendees to the JEDEC meetings, On Semiconductor's manufacturers, and Defendants' customers as third-party witnesses. While On Semiconductor heavily relies on Defendants' Texas customers, Defendants point out that they have a greater number of customers in California. To the extent it appears that the non-party witnesses in California slightly outnumber the Texas non-party witnesses, this factor supports transfer.

**Other Practical Problems**

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").

11

The parties do not expressly dispute this factor. However, NTC Texas has moved to dismiss the case against it for improper venue. Although the Court does not formally reach that motion because the Court is granting the motion to transfer, this District is a very questionable venue for NTC Texas. Although NTC Texas is located in Texas, its contacts with this District are scarce. If the Court were to grant the motion to dismiss, On Semiconductor would either have to litigate two cases—this case and another against NTC Texas, which would raise serious issues for judicial economy and the possibility of inconsistent results or claim constructions—or move to transfer the case to a district where all Defendants could be sued or give up its claims against NTC Texas. Since it is undisputed that all parties are amenable to suit in the Northern District of California, transferring this case to the Northern District of California would alleviate concerns about judicial economy and simultaneous duplicative suits. Accordingly, this factor strongly weighs in favor of transfer.

**The Administrative Difficulties Flowing from Court Congestion**

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *Id*.

Defendants contend this factor is neutral. On Semiconductor contends this factor weighs against transfer because cases reach trial sooner in this District. As this factor is the most speculative, and the differenc between the two districts' time to trial is only five months, this factor is neutral.

**The Local Interest in Having Localized Interests Decided at Home**

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371

F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

Except for Hittite, Defendants' U.S. operations are based in the Northern District of California. Thus, Defendants contend that district has a strong local interest in this case. Defendants also contend that On Semiconductor's allegations concerning the '286 patent implicate Hynix's and On Semiconductor's U.S.-based memory operations, both of which are centered in the Northern District of California.

On Semiconductor argues that Texas has a compelling interest in this case because at least eighty-five Texas companies purchase the accused products. Two of the largest global memory consumers, Dell and Hewlett-Packard, are in Texas. Additionally, Defendants employ over sixty individuals in Texas. However, Defendants counter that On Semiconductor has only identified six customers in this District, while they have identified 120 customers in the Northern District of California.

Both Districts have some interest in this case, but California's interest is greater. Accordingly, this factor favors transfer.

**The Familiarity of the Forum with the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws**

These factors are neutral.

**Conclusion**

The access to proof and compulsory process factors favor transfer, and the cost of attendance and local interest factors slightly favor transfer. The other practical problems factor strongly weighs in favor of transfer. Whether transfer would be clearly more convenient for the parties and witnesses is a close call. However, the Northern District of California will be the proper venue for all parties. That consideration tips the scale in favor of transfer. Accordingly, the Court grants the motion.

Motions to transfer in patent cases have become almost common place. Often, defendants merely seek to move the litigation to their home district under the assumption that since the plaintiff chose the forum where the case was filed, it cannot be a "good" venue for the defendant. The transfer issue becomes almost a separate litigation within the case, with discovery being taken and hundreds of thousands of dollars being spent to litigate the issue. Each side seeks to identify every possible witness and document in the United States that might support their position, the vast majority of whom will not be deposed, called to testify, or offered at trial.

The Court has serious questions over whether such a fight is in a client's best interest. As recognized by the transfer factors, litigating away from home does pose an increased cost in transporting documents to the trial location and housing party representatives and witnesses for the trial. However, as judged by the boxes of documents that often fill this Court's courtroom that go unopened at trial, the vast majority of documents are not needed. As for the cost or convenience of housing party representatives and witnesses, many will spend long hours and late nights during trial

preparing for the next day and will thus effectively be "away from home" during trial, even if the trial is in their home town. While the Court does place importance on the ability to bring truly necessary third-party witnesses to testify, such an occasion or need is fairly rare in this Court's experience. In the cases this Court has tried, the vast majority of the witnesses are being paid by one side or the other. But because documents, witnesses, and third-party witnesses have been identified as important to the transfer analysis, each sides seeks to unearth or identify every document and person that might have some connection to the case and is closer to their chosen forum, even though in this Court's experience these documents and witnesses are unlikely to ever see the inside of the courtroom. In this instance, their convenience supports transfer, and the parties can begin anew in a new court, with the attendant expenses associated with such a change of venue.

## CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Docket No. 64) and **TRANSFERS** this case to the Northern District of California. Accordingly, the Court **DENIES** as moot Nanya Technology-Texas LLC's motion to dismiss for improper venue (Docket No. 58).

Hittite moves to strike On Semiconductor's sur-reply because On Semiconductor allegedly misstates the role of Future Electronics in selling Hittite's products and accused products. On Semiconductor contends the parties simply disagree on how the evidence about Future should be characterized. As the Court does not rely on Future's contacts to the deny the motion to transfer, the Court **DENIES** the motion to strike as moot.

**So ORDERED and SIGNED this 30th day of September, 2010.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**